# CONCEPT SOFTWARE & SERVICES, INC.
# INTERN TO FULL TIME EMPLOYMENT AGREEMENT

This Employment Agreement (the "Agreement") dated as of <u>10/17/2011</u> (the "Effective Date") is made by and between Concept Software & Service, Inc., a Georgia corporation (the "Employer"), and Mitchell Petolillo, (the "Employee"). The Employer and the Employee may be referred to individually as a "Party" or collectively as the "Parties."

## RECITALS

**WHEREAS**, the Employer is engaged in the business of providing software and value-added solutions and services to Fortune 5000 companies globally; and

**WHEREAS**, the Employer desires to employ the Employee, and the Employee wishes to enter into such employment, on the terms and conditions set forth in this Agreement; and

**WHEREAS**, the Employer will provide training, at no cost to the Employee on TIBCO suite of application products, subject to the terms and conditions listed herein, and find placement for said Employee upon successful completion of his training and paid internship; and

**WHEREAS**, each Party is duly authorized and capable of entering into this Agreement.

**NOW, THEREFORE,** in consideration of the mutual acts and promises, covenants, agreements, representations, and warranties hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound, the Parties hereto agree as follows:

1. **EMPLOYMENT.**

The Employer hereby employs, engages, and hires the Employee on a full-time basis, and the Employee hereby accepts this employment and agrees to provide professional services as a Software Engineer Trainee, Intern and then subsequently as a Software Engineer, and further agrees to provide those other duties and related responsibilities as described in this Agreement. The Employee agrees and understands that he is an employee "at will," and nothing herein shall be interpreted to mean that the Employee is anything other than an employee at will. The Employee's employment may be terminated by either Party at any time pursuant to Section 12 hereof.

MP

## 2. DUTIES OF EMPLOYEE

2.1 The duties of the Employee shall include, but are not limited to, the following:

a) *Professional Services*: Attend all required training sessions regarding the training of TIBCO suite of applications. Upon successful training, assist in the development of professional software solutions utilizing TIBCO suite of applications and products for Employer's clients as directed by the Employer;

b) *Professional Attitude*: Employee will not in any fashion illegally discriminate among other employees, Employer's client's employees or other individuals on the basis of age, sex, nationality, race, or handicap;

c) *Ethical Behavior*: The Employee will maintain ethical and professional standards applicable in the industry;

d) *Cooperation*: The Employee agrees to cooperate with Employer to the fullest extent possible and provide services in a timely and professional manner so as to allow the Employer to complete projects within the timeframe required by the Employer's client;

e) *Travel*: The Employee agrees to travel for business purpose, from time to time and for the duration specified, to Employer's client's site or such other place or places as the Employer shall in good faith require or as the interest, needs, business, or opportunity of the Employer shall require;

f) *Reporting*: The Employee will report to his reporting manager as required by the Employer on a specified schedule, but for not less than once a week, during the duration of deployment at a Employer's client's site;

g) *Review*: The Employee will assist annually, upon request, in a review of office practices and objectives in order to determine compliance with applicable standards and to make recommendations as appropriate;

h) *Administrative Relationships*: The Employee, upon request, will participate in the establishment of procedures and methods of operation for the office;

i) *Office Relationships*: Employee will promptly and faithfully comply with all reasonable instructions, directions, requests, rules, and regulations made or issued by the Employer, and the Employee will perform the services conscientiously and in a timely manner in and to the best of the Employee's abilities at all times, when and wherever required or desired by the Employer and pursuant to the express and implicit terms of this Agreement, to the reasonable satisfaction of the Employer; and

j) *Exit Interview*: Employee shall, upon request, participate in an exit interview to be scheduled at the Employer's discretion.

2.2    The Employee agrees to maintain regular work hours as required by the Employer. The Employee shall also be available during non-office hours so as to respond within the time limits specified by the Employer in order to complete projects within the timeframe required by the client.

### 3. TERM.

The term of this Agreement shall begin on the Effective Date and continue until terminated by either Party in accordance with the provisions of Section 12 of this Agreement or by law. The period during which the Employee is employed pursuant to this Agreement shall be referred to as the "Employment Period."

### 4. COMPENSATION.

4.1    Subject to the terms and conditions of this Agreement, the Employee shall be compensated for his services as outlined in Schedule A, attached hereto and incorporated fully by reference.

4.2    All sums payable to the Employee under this Agreement shall be reduced by all federal, state, local, and other withholdings and similar taxes and payments required by applicable law.

4.3    The Employee shall be entitled to those benefits offered in Schedule B, attached hereto and incorporated fully by reference. The Employer may modify the foregoing benefits, without the consent of the Employee, in the event such modification is necessary to meet legal, operational or other needs.

### 5. OTHER EMPLOYMENT.

The Employee shall devote all of his time and attention solely to the Employer's business and interest. During the Employment Period, the Employee shall not engage, directly or indirectly, in any other business activity, regardless of whether it is pursued for gain or profit; provided, however, nothing contained in this Section 5 or Section 2 shall be deemed to prevent or to limit the right of the Employee to invest his money in real estate or in other companies if such investment does not oblige the Employee to assist in the operation of the affairs of such companies.

### 6. EXPENSES.

The Employer shall reimburse the Employee for all business expenses actually and properly incurred by the Employee in connection with his duties under this Agreement in accordance with the Employer's normal policies. The reimbursement of such expenses shall be subject to the Employee's provision to the Employer of receipts, statements, and vouchers to the Employer's satisfaction.

## 7. DEVELOPMENT

7.1 If at any time or times during his employment, the Employee shall (either alone or with others) make, conceive, create, discover, invent or reduce to practice any invention, modification, discovery, design, development, improvement, process, software program, work of authorship, documentation, formula, data, technique, know-how, trade secret or intellectual property right whatsoever or any interest therein (whether or not patentable or registrable under copyright, trademark or similar statutes or subject to analogous protection) (herein called "Developments") that (i) relates to the business of the Employer or any client of or supplier to the Employer in connection with such client's or supplier's activities with the Employer or any of the products or services being developed, or sold by the Employer or which may be used in relation therewith, (ii) results from tasks assigned to the Employee by the Employer or (iii) results from the use of premises or personal property (whether tangible or intangible) owned, leased or contracted for by the Employer, such Developments and the benefits thereof are and shall immediately become the sole and absolute property of the Employer and its assigns, as works made for hire or otherwise, and the Employee shall promptly disclose to the Employer (or any persons designated by it) each such Development and, as may be necessary to ensure the Employer's ownership of such Developments, the Employee hereby assigns any rights, title and interest (including, but not limited to, any copyrights and trademarks) in and to the Developments and benefits and/or rights resulting therefrom to the Employer and its assigns without further compensation and shall communicate, without cost or delay, and without disclosing to others the same, all available information relating thereto (with all necessary plans and models) to the Employer.

7.2 The Employee will, during his employment and at any time thereafter, at the request and cost of the Employer, promptly sign, execute, make and do all such deeds, documents, acts and things as the Employer and its duly authorized agents may reasonably require: (i) to apply for, obtain, register and vest in the name of the Employer alone (unless the Employer otherwise directs) letters patent, copyrights, trademarks or other analogous protection in any country throughout the world and when so obtained or vested to renew and restore the same; and (ii) to defend any judicial, opposition or other proceedings in respect of such applications and any judicial, opposition or other proceedings or petitions or applications for revocation of such letters patent, copyright, trademark or other analogous protection.

## 8. LIMITATION OF AUTHORITY

Without the express written consent of the Employer, the Employee shall have no apparent or implied authority to do any of the following acts:

a) Extend the credit of the Employer;

b) Bind the Employer under any contract, agreement, note, mortgage, or other obligation;

c) Discharge any debt due to the Employer; and

d) Sell, mortgage, transfer or otherwise dispose of any assets of the Employer.

## 9. CONFIDENTIALITY

During and after the Employment Period, except as permitted by the Employer or required by law, the Employee shall not divulge, disclose, reveal, make known to any person or appropriate to his own use or to the use of others any secret or confidential information or knowledge pertaining to or otherwise affecting the Employer's business including but not limited to any of its customer lists, client's data, products, services, costs, profits, markets, sales, trade secrets, proprietary records, proprietary data, proprietary information or other information not readily available to the public without regard to whether any of the above will be deemed confidential, material, or important. The Parties stipulate that, as between them, such matters are important, material, and confidential and affect the effective and successful conduct of the Employer's business, and the Employer's good will, and that any breach of the terms of this Section 8 shall be deemed a material breach of this Agreement.

## 10. NON-SOLICITATION & NON-COMPETITION.

10.1 The Employee agrees that the Employer has expended a substantial amount of time in developing its business in the software solution industry and that the Employer's business and the goodwill associated with it have been developed over many years. The business and goodwill of the Employer are valuable, and of proprietary interests.

10.2 During the Employment Period and for a period of two consecutive years thereafter, the Employee shall not for himself/herself, or on behalf of any other person, persons, firm, partnership, corporation, or company, whether Employee has any part of involvement with the foregoing or not shall not:

(a) canvass or solicit the business of (or procure or assist in the canvassing or soliciting of) any client, customer, or employee of the Employer who is known to the Employee as a result of his association with the Employer during the Employment Period for the purposes of competing with the Employer;

(b) accept (or procure or assist the acceptance of) any business or employment from any client, customer, or employee of the Employer known to the Employee as a result of his association with the Employer during the Employment Period for the purposes of competing with the Employer; provided, however, that the Employer may consent to such competition in writing; or

(c) otherwise contact, approach, or solicit (or procure or assist in the contacting, approaching, or soliciting of) any entity known to the Employee through his association with the Employer after the Effective Date in such a way as may cause detriment to the Employer.

(d) hire or retain the services of any agents or employees of Employer for any purpose, or induce or attempt to induce any agent, employee or representative of Employer to sever or otherwise alter their relationship with the Employer.

10.3 At the end of the Employment Period, by expiration or termination, the Employee shall not directly or indirectly engage, own, manage, control, operate, be employed by, participate in, or be connected in any manner with the ownership, management, operation, or control of any business similar to the type of business conducted by the Employer for a period of one year and within 60 mile radius, from the present location of the Employer's business as noted in Section 17 (hereinafter referred to as "Territory").

10.4 Employee agrees that the foregoing provisions are a material inducement for Employer to venture into an employment agreement with Employee and that the forgoing provisions are reasonable and necessary for the protection of Employer. Employee further agrees that Employee is fully capable of earning a living outside of the Territory upon termination of this Agreement.

10.5 The provisions of this Section 10 shall survive termination of Employee's employment relationship with the Employer. Each of the restrictive covenants contained in this section are separate, distinct, and severable obligations.

10.6 Notwithstanding any other dispute resolution procedures outlined in this Agreement, if the Employee actually breaches or threatens to breach the terms of this Section 10, Employee acknowledges that Employer will not have an adequate remedy at law and the Employer shall be entitled to obtain from the court of competent jurisdiction such equitable and injunctive relief which shall include but not be limited to a preliminary restraining order or any other type of an injunction restraining the Employee from violating this provision. Nothing in this Agreement shall be construed to prohibit the Employer from pursuing any other available remedies for such breach or threatened breach, including the recovery of damages and attorney fees from the Employee.

10.7 The Parties agree that the issuance of injunctive relief in favor of Employer for any violation by Employee of the covenants and agreements contained in this Section 10 and/or Section 9 does not preclude or remedy actual damages which Employer shall suffer prior to the issuance of such injunctive relief, or which shall continue notwithstanding the issuance of injunctive relief. The Parties agree that it is impractical and extremely difficult to determine such actual damages which may result from Employee's failure to comply with the provisions of this Section 9 and/or Section 10 for any one of the following reasons:

a) The difficulty of Employer to prevent a breach of Section 9 and/or Section 10 by Employee;

b) The difficulty of Employer to calculate actual damages and loss of business resulting from the disclosure of confidential information by Employee in violation of this Agreement;

c) The difficulty of Employer to ascertain the impact of a breach of this Agreement on Employer's existing and potential new clients; and

d) The difficulty that Employer may experience in obtaining timely injunctive relief.

Therefore, it is expressly agreed by Parties that in the event the Employee violates the terms and provisions of Section 9 and/or Section 10, Employer shall receive the sum of Eight Thousand Dollars ($8,000.00) in lump sum from Employee, which sum Employee shall pay within thirty (30) days of receipt of written notice from Employer. Such sum shall constitute liquidated damages in full settlement of Employer's damage claims. It is expressly acknowledged by Employee that said payment shall not be interpreted nor construed as a penalty, but as a good faith attempt and a reasonable estimation of the Parties to determine the damages which Employer shall suffer in the event of a breach of Section 9 and/or Section 10 by the Employee. The Parties agree that this section is intended to compensate Employer for damages caused by the Employee prior to the attainment of injunctive relief and for damages which cannot be prevented by injunctive relief.

## 11. TERMINATION

11.1 This agreement may be terminated as follows:

a) *Mutual Agreement*: By the mutual agreement of the Parties;
b) *Death*: Immediately upon the death of the Employee;
c) *Disability*: Immediately upon determination of disability;
d) *Termination by Employee for Cause*: By the Employee upon ninety (90) days' prior written notice if Employer is in breach of any material provision of this Agreement, provided Employer has not cured such breach before the expiration of the notice period. To be valid, any notice given under this provision shall set forth the facts that underline the claim that the Employer is in breach;
e) *Termination by Employee without Cause*: By the Employee upon ninety (90) days' prior written notice.
f) *Termination by Employer*:
   i. Immediately upon written notice in the event the Employee commits any act of professional misconduct;

ii. Immediately upon written notice if the Employee willfully damages Employer's property, business, reputation or goodwill;
iii. Immediately upon written notice if the Employee willfully injures any independent contractor, employee or agent of the Employer or Employer's client;
iv. Immediately upon written notice if the Employee is convicted of a felony under federal or state law;
v. Immediately upon written notice if the Employee solicits business on behalf of a competitor or potential competitor who competes in Employer's business or industry;
vi. Immediately upon written notice if the Employee sexually harasses any employee or contractor of the Employer, employee of Employer's client or commits any act which otherwise creates an offensive work environment for employees or contractors of the Employer or the employees or contractors of Employer's clients;
vii. Upon thirty (30) days' prior written notice if the Employee is continually inattentive to, or neglectful of, the duties to be performed by the Employee, which inattention or neglect is not the result of illness or accident;
viii. Upon thirty (30) days' prior written notice if the Employee uses any mood altering or controlled substances except as prescribed by a physician;
ix. Upon thirty (30) days' prior written notice if the Employee is in breach of any material provision of this Agreement provided the Employee has not cured such breach before the expiration of the notice period. To be valid, any notice given under this provision shall set forth the facts that underlie the claim that the Employee is in breach; and

g) *Termination by Employer without Cause*: By the Employer upon thirty (30) days' prior written notice.

11.2 Notwithstanding anything contained within this Agreement to the contrary, at the discretion of the Employer, upon receipt of notice of termination, the employment of the Employee may be terminated immediately and the Employee shall vacate the offices of the Employer or its clients immediately (or such other date as determined by Employer) if the Employer determines i) the Employee's ongoing presence in the offices creates a potentially dangerous situation for other individuals or staff, or ii) the Employee is acting in a manner toward other staff members or the client or its members contrary to the best interests of the Employer.

## 12. EFFECT OF TERMINATION

As of the date of termination of this Agreement, this Agreement shall be of no further force or effect and each of the Parties shall be relieved and discharged from their respective rights and obligations hereunder, except i) the provisions of Section 9 and Section 10 shall continue to be given effect in accordance with their terms; and ii) such other provisions which by their terms are to be effective after termination shall continue to be in effect. Upon termination of this Agreement, employer shall discontinue the use of the Employee's name as being associated with Employer. Employee shall vacate Employer's business premises or Employer's client's site on the date of termination.

### 13. RECOUPMENT OF TRAINING AND PLACEMENT COSTS/ CREDITS

Employer extends or loans, and Employee agrees to accept, as an Employee an education credit or loan in the amount of Nine Thousand Eight Hundred U.S. Dollars ($9,800.00) to facilitate the initial training of the Employee with regards to TIBCO suite of applications. The Parties agree that Employer has invested significant amount of capital and man hours in training, and employing the Employee as the Employee transitions from, initially, an software services intern to a full-time software engineer. Additionally, Employee agrees that said credit amount is recouped over time as the Employee continues his employment with the Employer. In the event the Employee exercises his right to terminate said Agreement pursuant to Section 11, prior to twelve months from the Effective Date, Employer shall receive Nine Thousand Eight Hundred U.S. Dollars ($9,800.00) in lump sum from the Employee as recoupment of the educational credit loaned out on behalf of the Employee. Employee further agrees to execute a personal guaranty, as provided by the Employer, for the benefit of the Employer whereby Employee agrees to refund the Employer for the costs associated with his training. Said guaranty will be for Nine Thousand Eight Hundred U.S. Dollars ($9,800.00).

### 14. RETURN OF PROPERTY.

At the end of the Employment Period or at any time on the Employer's request, the Employee agrees to promptly return to the Employer, retaining no copies or notes, all property, equipment, materials, records, documents, surveys, plans, strategies, analyses, and works of authorship fixed in any tangible medium of expression, including without limitation, all computer disks, tapes and print-outs, that the Employee has prepared or that have come into Employee's possession during his employment with Employer that relate to the services rendered on behalf of the Employer. Employer shall withhold any outstanding payments or benefits due to Employee until all of Employer's items are returned in good working condition by the Employee.

### 15. FURTHER ASSURANCES.

Each Party hereto shall cooperate and take such further action as may be reasonably requested by the other Party in order to carry out the terms and purposes of this Agreement and any other transactions contemplated herein.

## 16. ARBITRATION.

16.1 Any dispute, controversy or claim arising out of or relating to this Agreement, or the breach, termination, enforcement, interpretation or validity of this Agreement shall be settled by arbitration in the city of Atlanta, Fulton County, before one arbitrator who has significant experience arbitrating employment claims related to software manufacturers. The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those Rules as those Rules exist on the Effective Date of this Agreement which shall include Rules 16.1 and 16.2. The arbitrator shall be bound by the Agreement and shall interpret the Agreement in accordance with the applicable laws of the United States and the internal laws of the state of Georgia. Any award, order, or judgment made pursuant to such arbitration shall be deemed final and shall be entered and enforced in any court of competent jurisdiction. Any monetary award or judgment issued against the Employee shall be collected pursuant to all available legal collections methods available at the time of the judgment, which collection methods may include reporting said judgment to various credit agencies whereby it is reflected on the Employee's credit history. This clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction.

16.2 The parties shall maintain the confidential nature of the arbitration proceeding and the Award, including the Hearing, except as may be necessary to prepare for or conduct the arbitration hearing on the merits, or except as may be necessary in connection with a court application for a preliminary remedy, a judicial challenge to an Award or its enforcement, or unless otherwise required by law or judicial decision.

16.3 If the arbitrator determines a party to be the prevailing party under circumstances where the prevailing party won on some but not all of the claims and counterclaims, the arbitrator may award the prevailing party an appropriate percentage of the costs and attorneys' fees reasonably incurred by the prevailing party in connection with the arbitration.

16.4 In any arbitration arising out of or related to this Agreement, the arbitrator is not empowered to award punitive or exemplary damages, except where permitted by statute, and the parties waive any right to recover any such damages.

***** Employee Initial Here __MP__ *****

## 17. NOTICE.

Whenever any party hereto desires or is required to give any notice demand, consent, approval, satisfaction or request with respect to this Agreement, each such communication shall be in writing and shall be effective only if it is delivered by personal service (which shall include by overnight courier, or by mail (registered or certified mail,



postage prepaid, return receipt requested)) to the respective Party at the following address:

    If to the Employer:
    Concept Software & Services, Inc.
    Attention: Human Resources Manager
    7094 Peachtree Industrial Blvd.
    Suite 250
    Norcross, GA 30071

    If to the Employee:

    Mitchell Petolillo
    1003 Tree Creek Pkwy
    Lawrenceville GA 30043

### 18. SUCCESSORS AND ASSIGNS.

This Agreement shall apply to all work performed by the Employee for the Employer, including any of its past, present, or future affiliates or subsidiaries, and shall be binding on the Employer's assigns, executors, administrators, and other legal representatives. This Agreement shall inure to the benefit of the Employer's successors and assigns. The Employee acknowledges that his services are distinctive and personal, and that he therefore may not assign his rights or delegate his duties or obligations under this Agreement.

### 19. NO IMPLIED WAIVER.

The failure of either Party to insist on strict performance of any covenant or obligation under this Agreement, regardless of the length of time for which such failure continues, shall not be deemed a waiver of such Party's right to demand strict compliance in the future. No consent or waiver, express or implied, to or of any breach or default in the performance of any obligation under this Agreement shall constitute a consent or waiver to or of any other breach or default in the performance of the same or any other obligation.

### 20. GOVERNING LAW.

This Agreement shall be governed by the laws of the state of Georgia. If arbitration or ancillary litigation results from or arises out of this Agreement or the performance thereof, the Parties agree to reimburse the prevailing Party's reasonable attorneys' fees, court costs, arbitration costs, and all other expenses, whether or not taxable by the court as costs, in addition to any other relief to which the prevailing Party may be entitled.

## 21. COUNTERPARTS/ELECTRONIC SIGNATURES.

This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument. For purposes of this Agreement, use of a facsimile, e-mail, or other electronic medium shall have the same force and effect as an original signature.

## 22. SEVERABILITY

22.1 Whenever possible, each provision of this Agreement, will be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be invalid, illegal, or unenforceable in any respect under any applicable law or rule in any jurisdiction, such invalidity, illegality, or unenforceability will not affect any other provision or any other jurisdiction, but this Agreement will be reformed, construed, and enforced in such jurisdiction as if such invalid, illegal, or unenforceable provisions had never been contained herein.

22.2 If the restrictions against solicitation and competition contained in Section 10 of this Agreement shall be determined to be unenforceable because they extend for too long a period of time or over too great a geographical area, or because they are too expansive in any other respect, Section 10 shall be interpreted to extend only over the maximum period of time for which they may be enforceable and over the maximum geographical areas as to which they may be enforceable, and to the maximum extent in all other respects as to which they may be enforceable.

## 23. ENTIRE AGREEMENT

This Agreement constitutes the final, complete, and exclusive statement of the understanding of the Parties with respect to the subject matter hereof, and supersedes any and all other prior understandings, both written and oral, between the Parties. It may not be changed orally but only by an agreement in writing signed by the Party against whom enforcement of any waiver, change, modification, extension, or discharge is sought.

## 24. HEADINGS

Headings in this Agreement are for convenience only and shall not be used to construe meaning or intent.

## 25. PRONOUNS AND PLURALS

Whenever the context may require, any pronoun used in this Agreement shall include the corresponding masculine, feminine or neuter forms, and the singular forms of nouns, pronouns, and verbs include the plural and vice versa.

## 26. CONSTRUCTION OF AGREEMENT

The respective parties have negotiated this Agreement, and the language shall not be construed for or against either Party.

## 27. COMPUTATION OF PAYMENT

Employer's accountant shall determine the amounts due to the Employee under this Agreement and all such determination shall be final and binding upon the Parties.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the date first above written.

**EMPLOYER**     CONCEPT SOFTWARE & SERVICE, INC.

By: _____
Name: RAVINDRA BHAVE
Title: PRESIDENT/CEO

Federal id # 58-2411204

**EMPLOYEE**    [ _____ ]

By: _____
Print Name: Mitchell Petoino

Social Security # ███████████

# SCHEDULE A

COMPENSATION FOR   **Mitchell Petolillo**

**As Programmer Trainee** -   $ 500 per month – gross compensation
Plus lodging and food per diem

Duration:  **4 months**

**As Programmer Intern** -   $ 1500.00 per month – gross compensation
Plus $400.00 per month for lodging and food
during assignment if assigned out of the metro
Atlanta area

Duration:  **12 months**

**As Software Engineer** -   $60,000.00 annual salary

*CSS Employment Agreement 03.23.11*

## SCHEDULE B

BENEFITS FOR   **Mitchell Petolillo**

**As Programmer Trainee** -          NONE

Duration: **4 months**

**As Programmer Intern** -           One-half (1/2) expense of health insurance with the provider of Employer's choosing
Paid Holidays - All Employer's standard holidays
Paid Vacation – Accrue vacation time per Employer policies.

Duration: **12 months**

**As Software Engineer** -           One-half (1/2) expense of health insurance with the provider of Employer's choosing
Paid Holidays - All Employer's standard holidays
Paid Vacation – Accrue vacation time per Employer Policies.

# PERSONAL GUARANTY

**WHEREAS**, <u>Mitchell Petolillo</u> (hereinafter called the "Borrower"), desires to transact business with and obtain credit or a continuation of credit from Concept Software & Service, Inc., a Georgia corporation (hereinafter called "Creditor") to facilitate the training of the Borrower;

**WHEREAS**, Creditor is unwilling to extend or continue credit to the Borrower unless it receives a guaranty of the undersigned covering the Liabilities of the Borrower to Creditor, as hereinafter defined.

**NOW, THEREFORE**, in consideration of the premises and of other good and valuable consideration and in order to induce Creditor from time to time, in its discretion, to extend or continue credit to the Borrower, the undersigned Guarantor does hereby absolutely and unconditionally guarantee to Concept Software & Service, Inc. the payment of all liabilities of the Borrower to Creditor of whatever nature, whether now existing or hereafter incurred, whether created directly or acquired by Creditor by assignment or otherwise, whether matured or unmatured and whether absolute or contingent (all of which are herein collectively referred to as the "Liabilities of the Borrower"). I hereby agree to bind myself to pay Concept Software & Service, Inc. on demand any sum which may become due to Concept Software & Service, Inc. by Borrower, whenever Borrower shall fail to pay the same.

The undersigned agrees that, with or without notice or demand, the undersigned shall reimburse Creditor, to the extent that such reimbursement is not made by the Borrower, for all expenses (including counsel fees) incurred by Creditor in connection with any of the Liabilities of the Borrower or the collection thereof.

This Guaranty is a continuing guaranty and shall remain in full force and effect irrespective of any interruptions in the business relations of the Borrower with Creditor; provided, however, that the undersigned may be noticed in writing, delivered personally to or received by registered mail, by the Creditor of the termination of this Guaranty with respect to all Liabilities of the Borrower incurred or contracted by the Borrower or acquired by Creditor.

All monies available to Creditor for application in payment or reduction of the Liabilities of the Borrower may be applied by Creditor in such manner and in such amounts and at such time or times as it may see fit to the payment or reduction of such of the Liabilities of the Borrower as Creditor may elect, and the obligations pursuant to this Guaranty shall not be affected by any surrender or release by the Borrower of any other security held by it for any claim hereby guaranteed.

The undersigned hereby waives (a) notice of acceptance of this guaranty and of extensions of credit by Creditor to the Borrower (b) presentment and demand for payment of any

of the Liabilities of the Borrower (c) protest and notice of dishonor or default to the undersigned or to any other party with respect to any of the Liabilities of the Borrower; (d) all other notices to which the undersigned might otherwise be entitled; and (e) any demand for payment under this guaranty.

This is a guaranty of payment and not of collection and the undersigned further waives any right to require that any action be brought against the Borrower or any other person or to require that resort be had to any security or to any balance of any deposit account or credit on the books of Creditor in favor of the Borrower or any other person.

No delay on the part of Creditor in exercising any rights hereunder or failure to exercise the same shall operate as a waiver of such rights; no notice to or demand on the undersigned shall be deemed to be a waiver of the obligations of the undersigned or of the right of Creditor to take further action without notice or demand as provided herein; under no circumstances shall any modifications or waiver of the provisions of this Guaranty be effective unless in writing nor shall any such waiver be applicable except in the specific instance for which given.

This guaranty is, and shall be deemed to be, a contract entered into under and pursuant to the laws of the state of Georgia and shall be in all respects governed, construed, applied and enforced in accordance with the laws of said State, and no defense given or allowed by the laws of any other state of the United States of America shall be interposed in any action hereon unless defense is also given or allowed by the laws of the State of Georgia.

EACH PARTY HEREBY WAIVES TRIAL BY JURY IN ANY ACTION, PROCEEDING, CLAIM, OR COUNTERCLAIM BROUGHT BY EITHER PARTY IN CONNECTION WITH OR ANY MATTER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS PERSONAL GUARANTY OR THE RELATIONSHIP OF CONCEPT SOFTWARE AND SERVICE, INC. AND BORROWER HEREIN.

It is understood by the undersigned Guarantor that any defaults, failure to pay when due or credit experience on the part of the undersigned Guarantor may be reported by Concept Software & Service, Inc. to a consumer credit reporting agency. **The undersigned Guarantor, recognizing that his or her individual credit history may be a necessary factor in the evaluation of this Personal Guaranty, hereby consents to and authorizes the use of a consumer credit report on the undersigned Guarantor by Concept Software & Service, Inc. as a business credit grantor from time to time as may be needed in the credit evaluation process.**

By: _Mitchell Petolino_ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓
(Name of Guarantor / SS #)

Address: _1003 Tree Creek Pkwy,_

_Lawrenceville, GA 30043_

Witness: _____

MP